CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAR 20 2006

JOHN F. CORCORAN, CLERK
BY: /s/ Fay Coleman
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CENTENNIAL BROADCASTING, LLC, *Plaintiff,* <br><br> v. <br><br> GARY E. BURNS <br><br> and <br><br> 3 DAUGHTERS MEDIA, INC., *Defendants.* | CIVIL ACTION No. 6:06-CV-00006 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter comes before the Court on Plaintiff Centennial Broadcasting, LLC's Motion for Preliminary Injunction ("Motion"), filed February 17, 2006. Argument was heard on March 13, 2006.

Upon consideration of the Motion, the Memorandum of Points and Authorities in support thereof, the Opposition filed by Defendants Gary E. Burns and 3 Daughters Media, Inc., the exhibits and testimony presented at the hearing, and the entire record herein, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

## I. FINDINGS OF FACT

1. On February 28, 2005, Defendant Gary E. Burns ("Burns") sold radio station WLNI-FM ("WLNI") to Centennial Broadcasting, LLC ("Centennial") for over $4.4 million. A substantial part of the price Centennial paid for WLNI was for its going concern value,

including the intangible value associated with its reasonable expectancy that WLNI's listeners and advertisers would continue to listen to the station and purchase advertising, despite their lack of any contractual obligation to do so.

2. In connection with the sale of WLNI, on February 28, 2005, Burns entered into a Non-solicitation and Consulting Agreement with Centennial.

3. Numbered paragraph 2 of the Non-solicitation and Consulting Agreement contains a covenant not to compete that prohibits Gary E. Burns, acting directly or through a corporation or other business controlled by him, from operating a radio station for a period of five years in the Roanoke-Lynchburg Arbitron Metro radio market if such station utilizes a programming format substantially similar to that used by WLNI on the date Centennial purchased WLNI.

4. "Arbitron" is a national radio audience measurement company that defines the "Roanoke-Lynchburg" market as encompassing the cities of Roanoke, Lynchburg, Bedford, and Salem, and six Virginia counties: Roanoke, Boutetourt, Bedford, Campbell, Amherst and Appomattox.

5. Arbitron relies on biannual fall and spring "sweeps," during which it collects diaries from radio listeners who record the stations they listen to and the amount of time spent listening to each station, to measure the market share of radio stations.

6. Like most radio stations, WLNI's primary source of revenue is from advertising. All other things being equal, the greater a station's market share among radio listeners, the more that station can usually charge for advertising time. Thus, advertising revenue is likely to rise as a station's market share increases and fall as a station's market share

decreases.

7. On the date Centennial purchased WLNI, February 28, 2005, WLNI would have been categorized in the radio industry as using a "Talk" format—even though it broadcasted sports events some hours of the week—because most of its programming consisted of shows that featured regular hosts, including nationally syndicated or local personalities, who devote blocks of time to commentary, often interspersed with conversation with guests or listeners.

8. Gary E. Burns, acting through 3 Daughters Media, Inc., a corporation owned and controlled by him, purchased a Bedford radio station, WBLT-AM ("WBLT"), on November 1, 2005, and changed WBLT's programming such that since November 1, 2005, or soon thereafter, within the 5-year restricted period, WBLT would be classified in the industry as using a "Talk" format, as described in paragraph 7, even though WBLT devotes some hours of the week to broadcasting sports and local meetings, events, and church services.

9. WBLT broadcasts out of Bedford, Virginia, into an area within the restricted Roanoke-Lynchburg Arbitron Metro radio market.

10. WBLT competes with WLNI for listeners.

11. According to Defendant Burns, WBLT presently earns minimal revenue from advertising or any other source.

12. Numbered paragraph 5 of the Non-solicitation and Consulting Agreement provides:

> The parties to this Agreement acknowledge that the injury to the Buyer resulting from any violation by the Covenantor of the covenants herein will be irreparable and of such a character that it cannot be compensated by money damages, that the remedy at law of any such violation will be inadequate, and that the damages resulting from any such

violation are not readily susceptible to being measured on monetary terms . . . . Covenantor shall not object to, and shall be deemed to join in Buyer's petition that bond or other security be waived in connection with any such restraining order or injunctive relief . . . .

## II. CONCLUSIONS OF LAW

A. There is a significant likelihood that Centennial will suffer irreparable harm if a preliminary injunction is not granted, in light of the fact that Arbitron's spring audience rating period will soon commence; WLNI's ratings, advertising revenues, and relationship with existing advertising customers will likely be adversely affected by the existence of a competing radio station with the same or a substantially similar programming format within the same Arbitron rating market; and any damages will be difficult, if not impossible, to measure because it will be impracticable to distinguish the revenue effects of the change in management of WLNI from the revenue effects of WBLT's competition. The parties' agreement in paragraph 5 of the Non-solicitation and Consulting Agreement that damages resulting from its violation damages are not readily susceptible to being measured on monetary terms bolsters this conclusion.

B. Because Defendants can use many other programming formats on WBLT that are not prohibited by the covenant not to compete, and the status quo is such that WBLT is presently earning minimal advertising revenues, there is little likelihood of serious harm to the Defendants if the preliminary injunction is granted, particularly in comparison to the harm likely to inure to Plaintiff if it was not granted.

C. Plaintiff has a substantial likelihood of prevailing on the merits, because (i) the evidence of record shows that Burns, acting through 3 Daughters Media and within the restricted period and area, violated the covenant not to compete because WBLT uses the same or a

4

substantially similar format as that used by WLNI; and (ii) the restriction on Burns contained in the covenant not to compete is reasonable and enforceable under Virginia law, given the context of a sale of a business and the substantial compensation Burns received for goodwill, and the fact that it is narrowly tailored to preserve the value to Centennial of its purchase: the restriction lasts a reasonable term, 5 years, and it allows Burns to operate radio stations as long as they use dissimilar formats or operate outside a reasonably defined geographic area.

D. The public interest would be served by entering the preliminary injunction in that the preliminary injunction would only enforce the terms of a valid and enforceable agreement between the parties until the matter can be heard on the merits.

E. In Section 5 of the Non-solicitation and Consulting Agreement, Burns waived the requirement of a bond or a bond with security in connection with the issuance of an injunction to enforce the terms of the covenant not to compete; and in any event, there is little likelihood that Gary E. Burns would suffer any permanent harm by not requiring a bond or a bond with security in that the plaintiff corporation is a solvent corporation and the dollar amount of damage that would be suffered by the defendants is relatively small, if any.

Therefore, the Court having determined that there are just grounds to grant the Motion, it is, this 20nd day of March 2006, hereby ORDERED that:

1. Plaintiff's Motion for Preliminary Injunction is GRANTED;

2. Defendants Gary E. Burns and 3 Daughters Media, Inc. are enjoined from further use of nationally syndicated or local talk radio shows —as the "talk" show format is defined in

5

¶7 of the Findings of Fact—on radio station WBLT-AM, licensed by the Federal Communications Commission to Bedford, Virginia, during the pendency of this action or until further order of this Court; and

3. Pursuant to Rule 65(c) F.R.C.P., Centennial shall post security in the amount of Zero Dollars, said security having been waived in the underlying contract and the ability of the Centennial to satisfy any subsequent judgment against it being sufficient.

_____
United States District Court Judge

Copies to:

Jerry William Boykin, Esq.
James B. Kinsel, Esq.
Melissa G. Ferrario, Esq.
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike, Fourth Floor
Tysons Corner, Virginia 22182

Richard E. Spies, Esq.
O'Keeffe & Spies
828 Main Street, Suite 1803
Post Office Box 1419
Lynchburg, Virginia 24505-1419

Craig P. Tiller, Esq.
Freeman, Dunn, Alexander, Yeatts & Tiller, P.C.
1045 Cottontown Road
Lynchburg, Virginia 24503