CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUN 0 8 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CENTENNIAL BROADCASTING, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>GARY E. BURNS<br><br>and<br><br>3 DAUGHTERS MEDIA, INC.,<br><br>*Defendants.* | CIVIL ACTION NO. 6:06-CV-00006<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dissolve Preliminary Injunction. For the reasons stated below, the Motion will be denied.

## I. Background

On February 17, 2006, Plaintiff brought this diversity action seeking permanent injunctive relief and damages arising out of Defendants' alleged violation of a noncompetition agreement entered into by the parties in connection with Defendant Gary Burns' sale of radio station WLNI-FM to Plaintiff on February 28, 2005.[1]

That same day, Plaintiff also filed a Motion for Preliminary Injunction, seeking to enjoin

---

[1] The noncompetition agreement prohibits Defendant Burns from operating a radio station for a period of five years in the Roanoke-Lynchburg Arbitron Metro radio market "if such station utilizes a programming format substantially similar to any format" used by WLNI on the date Plaintiff acquired WLNI. (Verif. Complaint Exh. A; D. Memo. in Opp. Exh. 2).

1

Defendants from further use of a "talk" radio format on WBLT-AM ("WBLT"), a station owned by Defendant 3 Daughters Media and controlled by Burns.

After considering the parties' briefs on the merits of the preliminary injunction, the Court determined that the material facts of this case are not in dispute and the issues presented are narrow, and therefore that consolidation of the preliminary injunction hearing with the hearing on the merits under Rule 65(a)(2) might be appropriate. To that end, the Court informed the parties orally and in writing prior to the hearing of the possibility of consolidation. *See* (Op. & Order at 1-2, May 19, 2006).[2]

The parties presented exhibits and testimony at the March 13, 2006 hearing. Applying the four traditional factors set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manuf. Co., Inc.*,[3] the Court granted Plaintiff's motion and enjoined Defendants from further use of nationally syndicated or local talk radio[4] shows on WBLT during the pendency of the action or until further order of the Court. (Op., March 20, 2006).

Defendants' motion to dissolve followed on May 3, 2006.

## II. Standard of Review of a Motion to Dissolve a Preliminary Injunction

Because a decision to issue a preliminary injunction is appealable pursuant to 28 U.S.C.

---

[2] Because the preliminary injunction hearing was rescheduled on short notice, the Court agreed that Defendants reserved the right to offer the deposition testimony of a media expert unavailable on the rescheduled hearing date before the Court made a final decision on the merits. (Op. & Order at 1-2, May 19, 2006).

[3] 550 F.2d 189 (4th Cir. 1977).

[4] The Court defined the "talk" format as consisting of "shows that feature[] regular hosts, including nationally syndicated or local personalities, who devote blocks of time to commentary, often interspersed with conversation with guests or listeners." (Op., March 20, 2006, ¶7).

2

§1292(a)(1), it is a "judgment" for the purposes of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 54(a); *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 400 (2d Cir. 2000); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 n.5 (9th Cir. 1984). A party may move to alter or amend a "judgment" no later than 10 days after its entry under Rule 59(e). A Rule 59(e) motion "may not be used to raise new arguments or present novel legal theories that could have been raised prior to judgment." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Nor may it be used to relitigate old matters, or present evidence that could have been raised prior to the entry of judgment. *Id.*

Defendants' May 3, 2006 motion to dissolve clearly was not filed within 10 days of the injunction's March 20, 2006 date of entry. However, the Court has continuing plenary power to modify or dissolve a preliminary injunction applying general equitable principles. *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974); *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (D.C.N.Y. 1977); *cf. System Federation v. Wright*, 364 U.S. 642, 647 (1961). Although a preliminary injunction is not a "final" order or judgment for the purposes of Rule 60(b),[5] courts nonetheless apply the general equitable principles set forth in Rule 60(b)(5), which provides for relief from a final judgment "if it is no longer equitable that the judgment should have prospective application." Thus, for example, the Fifth Circuit has held that a district court may modify a preliminary injunction "in light of subsequent changes in the facts or the law, or for any other good reason." *Callaway*, 489 F.2d at 578.[6] The Second and

---

[5] *Huk-A-Poo Sportswear*, 74 F.R.D. at 623.

[6] This standard is similar, if not identical, to that applied in the context of motions to modify or dissolve permanent injunctions under Rule 65(b)(5). *See* 11 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 2863 (2d ed. 1990 & 2005 Supp.)

3

Third Circuits, however, have stressed that a party moving to dissolve a preliminary injunction should not be permitted to relitigate arguments "that have already been considered by the district court in its initial decision." *Sprint Commc'ns Co. L.P. v. Cat Commc'ns Intern., Inc.*, 335 F.3d 235, 242 (3d Cir. 2003); *Am. Optical Co. v. Rayex Corp.*, 394 F.2d 155, 155 (2d Cir.), *cert. denied*, 393 U.S. 835 (1968) (admonishing against attempts "to relitigate on a fuller record preliminary injunction issues already decided" by the district court). Similarly, the district court should not consider arguments "that could have been raised at the time the preliminary injunction was issued." *Huk-A-Poo Sportswear*, 74 F.R.D. at 623-24.

Although the Fourth Circuit has never articulated these latter principles in the specific context of a motion to dissolve a preliminary injunction, they appear to be a necessary concomitant to the Fourth Circuit's rule with respect to Rule 59(e) that a party may not relitigate old matters, nor present new evidence or novel legal theories that could have been raised prior to the entry of judgment. *Pacific Ins. Co.*, 148 F.3d at 403. Indeed, it would be senseless if a party seeking to dissolve a preliminary injunction based solely on the amplification of old theories or new theories that could have been presented earlier faced an easier standard after expiration of Rule 59(e)'s 10-day period.

---

(noting that traditional equitable principles allowing relief from a judgment apply to "any judgment that has prospective effect"). The Second Circuit has held the power of equity to alter or dissolve a permanent injunction is not limited to changes to facts or the law, but also extends to cases in which "better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969). However, exercise of the Court's equitable power under Rule 65(b) is "not intended to benefit the unsuccessful litigant who long after the time during which an appeal from a . . . judgment could have been perfected first seeks to express his dissatisfaction." *Morse-Starrett Prods. Co. v. Steccone*, 205 F.2d 244, 249 (9th Cir. Cir. 1953).

## III. Discussion

Defendants first argue that the decision of the Federal Communications Commission in *In re Cumulus Licensing, LLC*[7] ("*Cumulus Licensing*"), which was issued three days after the preliminary injunction, requires that the injunction be dissolved. They also attempt to relitigate the issues of whether the noncompetition agreement is unenforceable because it is ambiguous or because it is contrary to public policy, and whether the balance of hardships and the public interest weigh against injunctive relief. As noted above, the law governing the appropriate standard of review of motions to dissolve precludes the Court from considering old issues—whether or not they have been amplified by new "facts"[8] or refashioned arguments—that could

---

[7] DA 06-645 (March 23, 2006), *available at* 38 Comm. Reg. (P & F) 43.

[8] Defendants would probably be heard to argue that "new" facts have come to light since the injunction was issued, revealing that it is having a devastating impact (1) on WBLT's ability to serve the Bedford community's needs; (2) on Defendants' ability to comply with statutes and regulations requiring that WBLT serve the public interest; and (3) on Defendant 3 Daughter Media's bottom line. (Memo in Supp. of Mot. Dissolve at 6 ("[P]ursuant to the Communications Act, radio station licensees are obligated to serve the 'public interest, convenience, and necessity'"); at 9 ("Due to the preliminary injunction's prohibition on 3 Daughters from broadcasting talk radio programs on WBLT(AM), 3 Daughters has been prohibited from broadcasting programs of interest to the public, including a town meeting . . . programming related to local political candidates and the upcoming elections . . . a weekly program with the Executive Director of the Bedford Area Chamber of Commerce . . . ."); and at 10 ("Burns and 3 Daughters are incurring considerable salary expenses in retraining and retaining . . . employees. In addition, Burns and 3 Daughters have been unable to sell spot advertising on WBLT(AM) since it changed its programming in order to comply with the preliminary injunction.")).
These are not the type of "new" facts that justify dissolution of an injunction. Defendants' alleged inability to serve the Bedford community's needs is caused, if anything, by their unreasonable, unjustified interpretation of the Court's injunction. If Defendants were genuinely confused about the scope of the injunction with respect to the airing of various community events involving talking, they could and should have sought clarification from the Court. Further, Defendants' alleged inability to comply with the Communications Act and FCC regulations again is caused by their own unreasonable interpretation of the scope of the injunction. In any event, Burns cannot be heard to complain that he boxed himself into a compliance corner by earning well over $4 million on the sale of a radio station, in exchange for

5

have been presented before the injunction issued.

Defendants next raise the new legal theory that the preliminary injunction violates their First Amendment rights because it is a prior restraint and because it is vague and overly broad. Again, the Court may not consider novel legal theories that could have been raised prior to entry of the preliminary injunction.[9] Finally, Defendants argue that the Court violated Rule 65(d) of the Federal Rules of Civil Procedure by failing to explain the reasons for the injunction's issuance in sufficient detail or the conduct prohibited with sufficient specificity.

The Court will now turn to the first and the final arguments Defendants raise.

### (a) Does *Cumulus Licensing* require that the injunction be dissolved?

Setting aside the issue of whether the FCC's *Cumulus Licensing* decision is binding on the Court, the first question is whether it is relevant to this case.

*Cumulus Licensing* involves the FCC's review of an application for a proposed assignment of the licenses of existing radio stations in connection with a sale of those stations. *Cumulus Licensing* at 1. Among other issues, the FCC considered the enforceability of a provision in the contract governing the assignment by which the assignor-vendor sought to restrict the assignee-vendee or any successor in interest from using an adult contemporary or

---

a large portion of which consideration he agreed not to compete with Centennial in a narrowly defined geographic market, and then purchased a station within that market in which he is contractually bound not to air talk radio. Finally, Defendants may not be heard to complain about the onerous costs of complying with the injunction, where the "costs" consist of nothing more than hypothetical foregone revenue and their own business decision to continue paying "overqualified" employees. This is far from a case in which "an injunctive order may be modified or dissolved . . . [because] conditions have so changed that it is no longer needed or as to render it inequitable." *Tobin v. Alma Mills*, 192 F.2d 133, 136 (4th Cir. 1951).

[9] To the extent Defendants argue that the injunction is vague and overly broad, this issue is addressed in connection with their challenge to the injunction under Rule 65(d).

6

country format for a period of five years. *Id.* at 7. Citing a radio licensee's responsibility for selecting programming material and establishing programming policies, and the Commission's longstanding view that "this responsibility cannot be 'unduly fettered by contractual arrangements restricting the licensee in his free exercise of his independent judgments,'" the Commission required the parties to delete the restriction as a precondition of approval of the proposed assignment. *Id.* at 8-9. In support of its decision, the Commission cited the public interest in preserving the "new" licensee's ability "to address the needs and interests of its local communities, to react to changing audience tastes and preferences, to respond to other competitors in the market, and to select its programming accordingly." *Id.* at 8.

Neither the rule of *Cumulus Licensing* nor the Commission's policy concerns are applicable in this case. Here, it is the assignor-vendor (Burns) who is subject to a restrictive covenant, not the assignee-vendee (Centennial). This is a critical distinction. Unlike the proposed assignment in *Cumulus Licensing*, the sale of WLNI involved no agreement to deplete the variety or scope of programming within the pool of existing FCC-licensed radio stations: the assignee-vendee, Centennial, faced no programming restrictions with respect to WLNI. Therefore, absent Burns' own actions, enforcement of the noncompetition agreement would not implicate the Commission's policy concerns at all. The subsequent depletion to the variety or scope of programming within the pool of existing FCC-licensed radio stations is attributable first and foremost to Burns' unilateral decision to buy a radio station in the narrowly defined geographic market outlined in the noncompetition agreement—not to the noncompetition agreement itself or the Court's injunction.

7

Case 6:06-cv-00006-NKM-mfu   Document 41   Filed 06/08/06   Page 7 of 10   Pageid#: 431

(b) **Did the Court fail to give sufficient reasons for the injunction or neglect to describe its scope with sufficient specificity?**

Rule 65(d) of the Federal Rules of Civil Procedure provides in relevant part:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . .

This rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Defendants maintain that the Court violated Rule 65(d) by failing "to set forth reasons for its broad restriction prohibiting all talk programs, when the contract language would permit programming that is not substantially similar" and (2) because the language of the injunction lacks specificity. (Memo in Supp. of Mot. Dissolve at 20).

Defendants mischaracterize the Court's injunction. The Court enjoined only Defendants' airing of "nationally syndicated or local talk radio **shows**" (emphasis added) and defined talk radio shows as shows featuring "regular hosts, including nationally syndicated or local personalities, who devote blocks of time to commentary, often interspersed with conversation with guests or listeners." By these terms, the injunction clearly does not prohibit all programming that involves talking, as Defendants would argue. *See* (Memo in Supp. of Mot. Dissolve at 9, 17-18, 20, Burns Affid Exh. B). For example, town meetings and high school football games are not reasonably understood to be talk radio "shows" simply by virtue their being broadcast; nor is a political "advertisement" reasonably understood to be a "show"; nor are the attendees of a town meeting or the Director of Bedford's Chamber of Commerce, who

8

participate in meetings in their roles as citizens or public officials, transformed into "regular" talk radio "hosts" by virtue of the broadcasting of meetings in which they participate.

To the extent that Defendants take issue with the Court's failure to set forth reasons for not dividing the talk radio "format" into numerous talk sub-formats, the Court relied on the evidence presented to it at the March 13, 2006 hearing and the sworn affidavit of a media expert concerning the meaning of the term "format" within the radio industry. *See* (2/17/06 Shaw Affid ¶4; Tr. 12-16). Defendants themselves presented testimony and documentary evidence which reflected that the radio industry refers to talk radio as a "format" and that different genres of talk radio are referred to as "sub-formats" or "categories." (3/6/06 Burns Affid. Exhs. D, E; Tr. 115-116). The noncompetition agreement at issue in this case uses the term "format"—not "sub-format" or "category."

The Court believes that the injunction is sufficiently specific, as it provides a detailed, descriptive definition of the type of programming prohibited. If Defendants are sincerely concerned or confused about the scope of the injunction, they may request clarification from the Court. *See, e.g., Flavor Corp. of America v. Kamin Indus., Inc.*, 503 F.2d 729, 732 (8th Cir. 1974).

## IV. Conclusion

For all of the above reasons, Defendants' motion to dissolve will be denied in an order to follow. No hearing is needed to decide the motion, which only attempts to rehash old arguments, propound novel legal theories that could have been raised prior to issuance of the preliminary

9

injunction, and dress up an inapposite FCC decision as a change in governing law.[10] The Defendants are welcome to move the Court to clarify the injunction and to propose additional clarifying language.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all Counsel of Record.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

Date: June 8, 2006

---

[10] Because the Court informed the parties prior to the March 13, 2006 hearing of the possibility of consolidation under Rule 65(a)(2), the Court will not consider Defendants' First Amendment argument—which in any event a review of decisional law reveals to be wholly specious—in deciding the merits of the permanent injunction.

10