CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 1 2 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CENTENNIAL BROADCASTING, LLC, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 6:06cv006 |
| ) | |
| GARY E. BURNS, et al. ) By: | The Hon. Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendant ) | |

## REPORT AND RECOMMENDATION

This case concerns breach of a Non-Solicitation and Consulting Agreement ("Non-Solicitation Agreement") executed by the parties in connection with the sale of a radio station. On September 29, 2006, the district court entered a permanent injunction barring defendant Gary Burns ("Burns") from involvement in certain broadcast radio business in the Roanoke-Lynchburg area for the period of the Non-Solicitation Agreement. Centennial Broadcasting, LLC's subsequent petition for attorneys' fees and costs has been referred pursuant to 28 U.S.C. § 636 for report and recommendation. Following briefing and oral argument on March 12, 2007, the undersigned concludes and recommends to the district court that no costs or attorneys' fees be awarded because the agreement breached does not authorize such an award.

I.

Two related contracts provide the framework for the radio station sale underlying this case, an Asset Purchase Agreement and a Non-Solicitation Agreement. On October 27, 2004,

Centennial and defendants Burns and 3 Daughters Media, Inc. ("3 Daughters") executed an Asset Purchase Agreement concerning the sale of three radio stations.

Three provisions of the Asset Purchase Agreement bear on the issue of Centennial's request for attorneys' fees. Section 10.1(b) of the Asset Purchase Agreement provides for indemnification, including recovery of reasonable attorneys' fees and costs, for "any failure by Seller to perform or observe, or to have performed or observed any covenant, agreement or condition to be performed or observed by it pursuant to this Agreement." The term "Agreement" is defined in the first paragraph of the Asset Purchase Agreement to include "all Schedules and Exhibits hereto." Exhibit 1 to the Asset Purchase Agreement was an unsigned form of a Non-Solicitation and Consulting Agreement. Section 7.8 of the Asset Purchase Agreement provides that "Seller shall have executed and delivered to Buyer the Non-Solicitation and Consulting Agreement in substantially the same form as attached hereto as Exhibit 1."

Following regulatory approval by the Federal Communications Commission, the parties executed a First Amendment to Asset Purchase Agreement on January 27, 2005.[1] The sale closed on February 28, 2005, at which time the Non-Solicitation and Consulting Agreement was executed.

Though meant to be complimentary,[2] in certain respects these two agreements are in conflict. For example, the Asset Purchase Agreement is governed by North Carolina law, and the

---

[1] The original Asset Purchase Agreement concerned three broadcast licenses, WLNI(FM), WMNA(AM) and WMNA-FM. The amended Asset Purchase Agreement concerned only the sale of WLNI(FM).

[2] In the September 29, 2006 Opinion and Order, the district court noted that the Non-Solicitation Agreement "was ancillary to, and protective of, a much larger agreement." Opinion and Order, September 29, 2006 at 16.

Non-Solicitation Agreement is governed by Virginia law. Significant to the pending motion for attorneys' fees and costs, while the Asset Purchase Agreement contains a provision authorizing an award of fees for breach of that agreement, the relevant portion of the Non-Solicitation Agreement does not.

## II.

Throughout the procedural history of this litigation, the focus has been on Burns' breach of § 2 of the Non-Solicitation Agreement which contains a restriction that Burns not own, manage, operate, control or otherwise participate in the management of a radio station utilizing a substantially similar programming format.

Count I of Centennial's lawsuit claimed breach of the Non-Solicitation Agreement due to Burns' involvement in the commercial broadcast business at another radio station; and Count II alleged that by this conduct, Burns also breached §§ 1.1 and 1.2(g) of the Asset Purchase Agreement, which required him to transfer all of the goodwill and going concern value of WLNI-FM to Centennial. Count III alleged breach of the covenant of good faith and fair dealing by Burns. Count IV alleged breach of the Non-Solicitation Agreement and the Asset Purchase Agreement by 3 Daughters Media.

Centennial's application for preliminary injunctive relief does not even address Centennial's likelihood of success on the merits of Counts II or III, focusing instead on preliminary enforcement of Burns' and 3 Daughters Media's obligations under § 2 of the Non-Solicitation Agreement. In its August 4, 2006 motion, Centennial moved that the Preliminary Injunction be made permanent, and its brief in support thereof stated that it was filed "in support of its request for a permanent injunction enforcing the terms of the Non-Solicitation and

3

Consulting Agreement (Covenant Not to Compete") executed in connection with Centennial's purchase of radio station WLNI-FM from Defendant Gray E. Burns ("Burns")." Understandably, therefore, the September 29, 2006 Opinion and Order granting the permanent injunction was focused on breach of § 2 of the Non-Solicitation Agreement, rather than any separate breach of the Asset Purchase Agreement.

Because there is no provision for award of attorneys' fees for breach of § 2 of the Non-Solicitation Agreement, Centennial seeks to invoke the indemnification provision of the Asset Purchase Agreement. Centennial argues that Burns' breach of the Non-Solicitation Agreement necessarily results in a breach of the Asset Purchase Agreement because § 7.8 thereof required execution and delivery of the Non-Solicitation Agreement on or before closing. To some extent, this argument is supported by the fact that § 10.1(b) provides for an award of attorneys' fees for breach of "this Agreement," which is defined in the first paragraph of the Asset Purchase Agreement to include "all Schedules and Exhibits hereto." The only Exhibit to the Asset Purchase Agreement was the form Non-Solicitation Agreement. Reading these three provisions (§§ 7.8, 10.1(b) and the definition of Agreement) of the Asset Purchase Agreement together, Centennial argues that it is entitled to attorneys' fees for breach of § 2 of the Non-Solicitation Agreement.

Defendants counter that the Asset Purchase Agreement and the Non-Solicitation Agreement are different agreements, there is no provision for attorneys' fees for breach of § 2 of the Non-Solicitation Agreement. Defendants argue that the parties certainly know how to craft an attorneys' fee provision, because one is contained in the Asset Purchase Agreement and in a separate Time Brokerage Agreement. Because such provisions exist there, and not as regards § 2

4

of the Non-Solicitation Agreement, defendants contend that the clear intent of the parties was that no attorneys' fees were to attach to breach of § 2 of the Non-Solicitation Agreement. Even more telling on this point, § 3 of the Non-Solicitation Agreement, concerning Burns' separate obligation to consult, contains an indemnification provision, including recovery of attorneys' fees.[3] Section 2, breached in this case, does not. Moreover, each of the two agreements contain an incorporation clause. In that regard, § 11 of the Non-Solicitation Agreement provides as follows:

> 11. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supercedes all prior arrangements, agreements and understandings relative to the subject matter hereof. No amendment, waiver of compliance with any provision or condition hereof, or consent provided for herein will be effective unless evidenced by an instrument in writing signed by the party against whom enforcement of any such change is sought.

Thus, defendants argue, this clause precludes Centennial from reading into the Non-Competition Agreement an award of attorneys' fees not provided for in that agreement.

Defendants also argue that Centennial cherry picks the attorneys' fee provision of the Asset Purchase Agreement while ignoring that agreement's North Carolina choice of law provision. Unlike Virginia law, North Carolina only allows an award of attorneys' fees pursuant to statute, and parties may not contract to award fees where a statute does not authorize them. See Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980) ("Even in the face of a carefully drafted provision indemnifying a party for such

---

[3]This case does not concern a breach of the consultation obligation in § 3 of the Non-Solicitation Agreement.

5

Case 6:06-cv-00006-NKM-mfu   Document 98   Filed 04/12/07   Page 5 of 11   Pageid#: 1206

attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor."); Sara Lee Corp. v. Quality Mfg., Inc., 201 F. Supp. 2d 608, 614-15 (M.D. N.C. 2002), aff'd, 61 Fed. Appx. 836 (4th Cir. 2005) ("North Carolina law is peculiar in that contractual provisions for attorney's fees arising from litigation are not enforceable without statutory authorization."). Defendants argue, therefore, that even if the attorneys' fee provision of the Asset Purchase Agreement applies to a breach of the Non-Solicitation Agreement, no fees may be awarded because the Asset Purchase Agreement is governed by North Carolina law.

### III.

At oral argument on this motion on March 12, 2007, Centennial argued that the district court had already decided that it was entitled to attorneys' fees and the only issue was an allocation of the appropriate amount. Centennial is incorrect, as the district court has not decided that issue. The closest the district court came to considering Centennial's claim for monetary damages was when it rejected Burns' contention that it lacked subject matter jurisdiction. Burns argued that because the Non-Solicitation Agreement reflected that Burns was paid consideration of $25,000 for its execution, the amount in controversy requirement was not met. The district court disagreed, noting that Centennial alleged in its complaint that it had sustained damages in an amount exceeding the jurisdictional amount. The district court added:

> Defendant's argument that the only "amount in controversy" is the price of the non-compete agreement is without merit. That agreement was ancillary to, and protective of, a much larger agreement. Mr. Burns received over $4 million for the goodwill of his business; destruction of less than 2% of that value by competition in violation of the agreement would clear the jurisdictional threshold.

6

Opinion and Order, September 29, 2006 at 16. Although the district court plainly rejected Burns' jurisdictional challenge based on the pleadings, it has not determined that Centennial is entitled to monetary damages.

## IV.

Virginia law is clear that "it is the duty of the court to construe a contract as it is made by the parties and not to make one for them. The guiding principle in the construction of a contract is the intention of the parties as expressed in the words they have used." W.D. Nelson & Co. v. Taylor Heights Dev. Corp., 207 Va. 386, 389, 150 S.E.2d 142, 145 (1966). As such, "courts must conclude that the parties intended what the written document plainly declares." Lenders Fin. Corp. v. Talton, 249 Va. 182, 190, 455 S.E.2d 232, 237 (1995).

The district court enjoined Burns and 3 Daughters from breach of the Non-Solicitation Agreement, and the issue is whether that injunction implicates the attorneys' fee provision in the Asset Purchase Agreement. The plain language of the two related agreements makes it clear that no attorneys' fees are recoverable.

First, while the two agreements are related, each contains different terms and serves different purposes. One is governed by Virginia law, and the other by North Carolina law.[4] Each agreement contains an integration clause, rendering it the entire understanding as to its subject

---

[4] The parties disagree as to which state's law should govern this issue. As noted above, the Asset Purchase Agreement is governed by North Carolina law, and the Non-Solicitation Agreement by Virginia law. Nonetheless, Centennial, which seeks to invoke the attorneys' fee provision in § 10.1(b) of the Asset Purchase Agreement, argues for Virginia law. It is forced to do so because, as noted above, North Carolina does not authorize awards of attorneys' fees absent statutory authorization. For this reason, no attorneys' fees are recoverable under North Carolina law. As addressed herein, nor may fees be awarded under Virginia law based on the intention of the parties as reflected in their contracts.

7

matter. See Restatement Contracts 2d § 210(1) (stating a completely integrated agreement is "adopted by the parties as a complete and exclusive statement of the terms of the agreement."). There is no provision for recovery of attorneys' fee for breach of § 2 of the Non-Solicitation Agreement contained in that agreement, and it would be inconsistent with the integration clause of that agreement to imply one. Drews Distributing, Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 351 (4th Cir. 2001) (holding that the purpose of an integration clause "is to clarify that the contract in which it is contained is the parties' entire agreement.").

Second, and more significantly, the parties clearly know how to craft an attorneys' fee provision, as one is contained in the Asset Purchase Agreement, the Time Brokerage Agreement and even in § 3 of the Non-Solicitation Agreement. The fact that there is no similar provision under § 2 of the Non-Solicitation Agreement speaks volumes that one should not be implied. Under Centennial's construction, the attorneys' fee provision in the Asset Purchase Agreement would apply in the case of a breach of § 3 of the Non-Solicitation Agreement as well as in the case of a breach of § 2. But such a construction would render superfluous the attorneys' fee provision of § 3 of the Non-Solicitation Agreement, in violation of the standard rule of contract construction that each provision of a contract be given effect. Roanoke Marble Co. v. Stafford, 155 Va. 249, 154 S.E. 518 (1930). Likewise, courts are required to construe contracts in such a manner so that "no word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly." Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). Because § 3 of the Non-Solicitation Agreement has its own attorneys' fees provision, Centennial's contention the court

8

must read the attorneys' fee provision of the Asset Purchase Agreement into the Non-Solicitation Agreement violates this cardinal rule of contract construction.

Likewise, Centennial's agreement that breach of the Non-Solicitation Agreement automatically breaches the Asset Purchase Agreement is unavailing. While § 7.8 required Burns to have executed and delivered to Centennial the Non-Solicitation Agreement at or prior to closing, that is all that § 7.8 requires. A failure by Burns to execute or deliver the Non-Solicitation Agreement at or prior to closing would breach § 7.8 of the Asset Purchase Agreement. A breach of a substantive term of the Non-Solicitation Agreement is a wholly separate matter subject to the terms of that agreement.

A better argument for reading the indemnification obligation under § 10.1(b) of the Asset Purchase Agreement into the Non-Solicitation Agreement is found in the definition of "Agreement" and the terms of § 10.1(b) itself, but that argument is ultimately unconvincing. Section 10.1(b) provides for indemnification and an award of attorneys' fees for breach of any "covenant, agreement or condition to be performed or observed by it pursuant to this Agreement." As defined in the introductory paragraph of the Asset Purchase Agreement, "Agreement" includes all Exhibits, of which there is only one, the form Non-Solicitation Agreement. Centennial argues that the definition of Agreement thus includes Exhibit 1, the unexecuted Non-Solicitation Agreement, and that therefore its substantive terms are covered by § 10.1(b). The fact that the Exhibit is an unexecuted form of the Non-Solicitation Agreement is significant. As the Non-Solicitation Agreement was not signed until closing, it had no force and effect until that time. But if Centennial's interpretation is correct, Burns' obligation to indemnify Centennial for breach of the Non-Solicitation Agreement commences upon execution of the

9

Asset Purchase Agreement. Carried to its logical extension, therefore, Centennial's argument would obligate Burns to indemnify Centennial for a breach of the Non-Solicitation Agreement even before that agreement was signed. Moreover, if Burns is bound to perform under the Non-Solicitation Agreement merely by virtue of the fact that it is attached as an Exhibit to the Asset Purchase Agreement, that would render superfluous the obligation under § 7.8 that Burns execute the Non-Solicitation Agreement at or prior to closing.

On balance, the intent of the parties is best determined by applying the plain language of each agreement. The Non-Solicitation Agreement contains no provision for an award of attorneys' fees for breach of § 2, and it strains the construction of the Asset Purchase Agreement far beyond its plain meaning to inject its indemnification provision into the Non-Solicitation Agreement. As such, it is **RECOMMENDED** that Centennial's application for attorneys' fees be **DENIED**.

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

Enter this 12th day of April, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge